UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 DEC -6 PM 2: 14

DEPUTY CLERK____BWH

| | | |
|---|---|---|
| ROSEMARY SALAZAR | § | |
| | § | |
| v. | § | Civil Action No. 5:18-CV-232-H |
| | § | |
| LUBBOCK COUNTY HOSPITAL | § | |
| DISTRICT D/B/A UNIVERSITY | § | |
| MEDICAL CENTER | § | |

## **PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Rosemary Salazar, Plaintiff, and makes and files this brief in response to

Defendant's motion for summary judgment.

Respectfully Submitted,

JOHNSTON & MILLER
Attorneys at Law
1212 13th Street, Suite 101
Lubbock, Texas 79401
Phone:  (806) 785-1499
Fax:     (806) 762-6901
Email:  jcraig@nts-online.net

By:_____
        J. Craig Johnston
        State Bar No. 00787784

ATTORNEYS AT LAW

1

# TABLE OF CONTENTS

Table of Contents................................................................................................2

Table of Authorities ...........................................................................................3

Legal Grounds for Response................................................................................4

Factual Grounds for Response .............................................................................4

Argument and Authorities....................................................................................9

    Summary Judgment Standard .........................................................................9

    Direct v. Circumstantial Evidence ................................................................10

    Prima Facie Case of Discrimination .............................................................11

    Pretext ..........................................................................................................11

Conclusion .......................................................................................................17

Certificate of Service .........................................................................................18

TABLE OF AUTHORITIES

STATUTES AND RULES

29 U.S.C. §623(a)(1) ................................................................................................11

Fed. R. Civ. P. 56 (a) ................................................................................................9

CASES

*Goudeau v. National Oilwell Varco, L.P.*,

      793 F.3d 470 (5th Cir. 2017) ...................................................................11,12,15,17

*Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005) ..................................11,15

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...........................................10

*Nationwide Mut. Ins. Co. v. Lake Caroline , Inc.*, 515 F. 3d 414 (5th Cir. 2008) ..............10

*Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000)....................................11

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002).....................................11

*Smith v. Wal-Mart Stores (no. 471)*, 891 F.2d 1177 (5th Cir. 1990) ..................................10

*Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224 (5th Cir. 2015) ............................................10

*United Fire & Cas. Co. v. Hixson Bros.*, 453 F. 3d 283 (5th Cir. 2006)............................10

*Urbano v.Continental Airlines, Inc.*, 138 F. 3d 204 (5th Cir. 2006)....................................10

3

1.

## LEGAL GROUNDS FOR RESPONSE

a.      The summary judgment evidence in this case is sufficient to create a genuine issue of material fact that Plaintiff's employment with Defendant was wrongfully terminated because of her age.

b.      The summary judgment evidence is sufficient to create a genuine issue of material fact regarding whether the legitimate reasons offered by Defendant for terminating Plaintiff's employment were not its true reasons but were, instead, a pretext for discrimination.

2.

## FACTUAL GROUNDS FOR RESPONSE

Plaintiff is a former employee of the defendant, Lubbock County Hospital District dba University Medical Center (hereinafter referred to as "UMC"). (App.1). Plaintiff was employed by UMC in its respiratory department for twenty seven years, from 1990 until she was fired on March 13, 2017. (App.1). Plaintiff was 57 years old and earning approximately $102,000 per year when she was fired by UMC. (App.1). Plaintiff worked within the UMC respiratory therapy department the entire time she was employed by UMC. (App.1). At the time she was fired, Plaintiff was employed as an educator in UMC's respiratory therapy department. (App.1). Plaintiff served as an educator in the respiratory therapy department on two occasions, first from 2004 to 2012, and a second time from 2014 until she was fired in 2017. (App.1).

Plaintiff loved her job as an educator in the respiratory therapy department as it gave her an opportunity to work with younger respiratory therapists and to pass on the skills and

knowledge she had developed over the years. (App.1-2). Plaintiff's duties as an educator included teaching new respiratory therapists the necessary skills to be successful including skills related to their duties, hospital protocol, policies, equipment, practices and documentation. (App.2).

Plaintiff contends that as an educator, she performed her duties properly and in accordance with the policies of UMC. (App.2). During Plaintiff's first tenure as an educator from 2004 to 2012, she received good evaluations and regular merit raises. (App.2). Merit raises are raises that are based upon an employee's good job performance. (App.2). During this time, Plaintiff was never counseled, written up or in any manner disciplined for failing to properly perform her duties as an educator. (App.2). After serving as the assistant director of the respiratory therapy department from 2012 to 2014, Plaintiff returned to her position as an educator in the respiratory therapy department because, for Plaintiff, the educator position was her passion. (App.2).

Plaintiff was fired by Robert Lopez, the director of the Respiratory Therapy Department, on March 13, 2017. (App.4). Lopez told Plaintiff that she was being fired because, according to Lopez, Plaintiff was a poor educator. (App.4). Plaintiff, however, contends strongly that she was not a poor educator and that Lopez's reason for firing her is false. (App.4). Plaintiff served as an educator at UMC for a total of eleven years during which time she received numerous merit raises for her job performance. (App.4). At no time was Plaintiff ever counseled or reprimanded for poor job performance as an educator. (App.3-6).

Plaintiff was not fired because of poor job performance. Instead, she was fired because of her age. (App.2).  Plaintiff was 57 years old when she was fired and had worked at UMC for

5

twenty seven years. (App.1). Plaintiffs age and consistent performance over the years at UMC had created longevity in her employment which had in turn resulted in her having a significantly higher salary than that of younger employees in the respiratory therapy department. (App.2). This was also true of other older employees in the department. (App.3). In 2017, newly hired younger respiratory therapists made $21.00 per hour while older, long time employees in the department earned $35.00 per hour. (App.3). The older employees in the department earned higher pay because of their longevity and experience which resulted from numerous merit pay increases due to their many years of good service to UMC. (App.3). In 2016, UMC hired an unusually high number of new and young respiratory therapists. (App.7). Thereafter, in 2017, UMC began to fire older employees in the respiratory therapy department. (App.3). These older employees were earning significantly more than the younger employees in the department. (App.3). In addition to Plaintiff, at least three other long time employees of the respiratory therapy department, each of whom was over sixty years of age, were fired by UMC. (App.3). Plaintiff and the other three older employees were all fired by Lopez in 2017. (App.3).

Plaintiff was fired on March 13, 2017 for alleged poor job performance despite the fact that from the time she returned to her position as an educator in 2014 up to the date she was fired, she was never counseled, warned, written up or in any way disciplined by UMC for any issue related to poor job performance. (App.3-6). Moreover, during Plaintiffs twenty seven years as an employee of UMC, she was never disciplined for poor job performance. (App.3).

UMC, when it fired Plaintiff, failed to follow the progressive discipline plan it had in place that identified the steps to be taken before firing an employee. (App.3-4). Generally, the

6

steps to be taken before firing an employee are: (1) informal counseling; (2) written disciplinary counseling; (3) reprimand with probation; and (4) reprimand with suspension. (App.3). Despite this policy, Plaintiff was not counseled, nor did she receive any type of warning, probation or suspension before being fired. (App.3-4). Plaintiff was fired for allegedly being a poor educator, she was not accused of engaging in any type of serious conduct that would warrant automatic termination. (App.4). Plaintiff did not violate any safety policy of UMC as an educator and was not told that at the time of her firing. (App.4).

In 2016, Plaintiff received a performance evaluation from Anthony Trantham related to her job performance in 2015. (App.4). The performance evaluation was good enough that Plaintiff received a merit raise for that year. (App.4). The performance evaluation had suggestions for ways for Plaintiff to improve her performance as an educator. (App.4). Plaintiff followed the suggestions and applied them to her work as an educator. (App.4). In this regard, Plaintiff started coming in later at night, began taking a greater role in actively monitoring younger respiratory therapists, and started to personally make rounds with the younger therapists. (App.4). Plaintiff also gave the younger therapists her telephone number and encouraged them to call her anytime. (App.4). From the time Plaintiff made the suggested changes up until the time she was fired, Plaintiff was not told by anyone from UMC that the changes were not satisfactory or that her job performance was not where it should be. (App.4).

Plaintiff wholly controverts the statements made by Robert Lopez and Anthony Trantham in support of UMC's motion for summary judgment. (App.1-8). In their statements, Lopez and Trantham make numerous claims concerning Plaintiff's job performance during 2016 and 2017.

Among other things, they claim Plaintiff struggled with her job as an educator, that multiple complaints were received by them concerning Plaintiff during this time, and that they made multiple attempts in 2016 and 2017 to improve Plaintiff's job performance through meetings where they claim to have told Plaintiff the things she needed to work on to improve her job performance. (App.5-7).

The statements by Lopez and Trantham are not true. (App.5-7). Lopez and Trantham never had a meeting with Plaintiff in 2016 or 2017 where they told her that she was not properly performing her job as an educator or that they had received complaints against her. (App.6). From and after the time Plaintiff received her 2015 annual review and implemented the suggested changes contained in the review, she was never counseled or in any way told that she was not properly performing her job duties. (App.6). The first and only time Plaintiff was told about these matters was on the day she was fired. (App.6).

To the extent that UMC might now be claiming that Plaintiff was fired for violating UMC policies regarding patient safety by being a bad educator, such a claim is absolutely false. (App.6). Plaintiff was an educator in the UMC respiratory therapy department for eleven years. (App.6). At no point before she was fired was Plaintiff ever told that she was a bad educator, that she was not performing her job properly or that patients were being placed at risk due to poor training of the respiratory therapists. (App.6). From 2014-2017, there does not appear to have been a single incident of improper patient care by a respiratory therapist or that improper respiratory therapy treatment caused a safety issue with a patient. (App.6). New respiratory therapists completed a thorough education program that included four weeks working on the

floor followed by four weeks of working in intensive care. (App.6). Their education and training did not cause safety issues for patients at UMC. (App.6).

To the extent that UMC now claims that Plaintiffs performance was substandard because of problems scheduling remediation training, such claim is also false. (App.7). In 2016, UMC hired an unusually high number of new, younger respiratory therapists. (App.7). All of the new therapists were properly educated as to their duties and responsibilities. (App.7). Their training was the same as that which had been given to the other respiratory therapists and Plaintiff was never told that there were any problems with the education being given to the new respiratory therapists. (App.7). Because of the number of new respiratory therapists and scheduling issues unrelated to Plaintiffs department, some difficulties arose in scheduling a remediation session for two therapists who needed a remediation session. (App.7). Plaintiff, however, handled the situation properly. (App.7). She met with the appropriate supervisors to have a day set aside for the training, she monitored the therapists during the time they were waiting for the supervisor to set a date for the training, the training took place when scheduled and was done properly. (App.7). Any claim now by Lopez or Trantham that this situation was not handled properly by Plaintiff is false. (App.7).

3.

ARGUMENT AND AUTHORITIES

a.    <u>Summary Judgment Standard</u>

The rules regarding summary judgments are well established.  Summary judgment is proper only if the movant establishes that there is no genuine issue as to any material fact and

9

that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). In determining whether a genuine issue of material fact exists, the court must construe all facts in a light most favorable to the non-moving party and must draw all reasonable and justifiable inferences in favor of the party. *United Fire & Cas. Co. v. Hixson Bros.,* 453 F. 3d 283, 285 (5th Cir. 2006). In reviewing a motion for summary judgment, the court should refrain from weighing evidence or making credibility determinations. *Nationwide Mut. Ins. Co. v. Lake Caroline , Inc.,* 515 F. 3d 414, 418 (5th Cir. 2008).

b.      Direct v. Circumstantial Evidence

A plaintiff can establish discrimination by either direct evidence of discrimination, statistical proof or circumstantial evidence. *Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir. 1998). In the absence of direct evidence of discrimination, the plaintiff can establish unlawful discrimination under the basic framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The first phase of the burden shifting framework is satisfied  by the plaintiff by meeting the elements of a prima facie case for the alleged cause of action. See *Smith v. Wal-Mart Stores (no. 471),* 891 F.2d 1177, 1178 (5th Cir. 1990). If a defendant then offers a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff, the plaintiff must produce specific evidence which would allow the trier of fact to find that the proffered reason for the adverse employment action were not the employer's true reason but were a pretext for discrimination. See *Squyres v. Heico Cos., L.L.C.,* 782 F.3d 224, 231 (5th Cir. 2015). "A plaintiff's prima facie case, along with sufficient evidence to find that the employer's asserted justification is false, may permit the trier

10

of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 147-148 (2000); see also *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896-897 (5th Cir. 2002).

c.   Prima Facie Case of Discrimination

The Age Discrimination in Employment Act prohibits an employer from firing an employee on the basis of the employee's age. 29 U.S.C. §623(a)(1). The elements of a prima facie case of age discrimination are that: (1) the plaintiff was discharged; (2) she was qualified for the position; (3) she was within the protected class (over 40) at the time of discharge; and (4) she was either replaced by someone outside the protected class, someone younger, or otherwise discharged because of age. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). Defendant does not by its motion challenge any of the elements of a prima facie case of age discrimination and, instead, argues that there is insufficient evidence to show that its proffered reason for discharge is false. Therefore, the existence of a prima facie case is established for the purpose of determining the merits of Defendant's Motion for Summary Judgment.

d.   Pretext

The fact that Defendant claims that Plaintiff was fired because of poor job performance satisfies its responsibility to show a legitimate non-discriminatory reason for firing Plaintiff. As a result, the issue in this case is whether Plaintiff can put forth sufficient evidence to raise an issue of fact to show that the reasons given by UMC for firing her were not its true reasons but were merely a pretext for discrimination. *Goudeau v. National Oilwell Varco, L.P.,* 793 F.3d 470, 474 (5th Cir. 2015); *Squyres* at 231. The plaintiff can meet this burden and establish intentional

11

discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Goudeau* at 476 (citing *Reeves* at 150). "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves* at 147-148. In the present case, the evidence is sufficient at the summary judgment stage to raise an issue of fact concerning whether the reasons given by UMC for firing Plaintiff are false. Such evidence, coupled with Plaintiff's prima facie case of discrimination, is sufficient to create a jury question on the issue of discrimination making summary judgment inappropriate.

Plaintiff clearly and unequivocally challenges the reason given by Defendant for firing her. Defendant claims she was fired because of poor job performance which it supports by statements from Robert Lopez and Anthony Trantham. The claims by Lopez and Trantham are hotly disputed in this case.  Specifically, Plaintiff, in her declaration, states the following to directly contradict UMC's position:

> "During the time that I served as an educator, I performed my duties properly and in accordance with the policies of UMC. During my first tenure as an educator from 2004 to 2012, I received good evaluations and regular merit raises. Merit raises are raises that are based upon an employee's good job performance. An employee who is performing poorly will typically not receive a merit raise. During this time, I was never counseled, written up or in any manner disciplined for failing to properly perform my duties as an educator.

> "After serving as the assistant director of the respiratory therapy department from, 2012 to 2014, I returned to my position as an educator in the respiratory therapy department. I returned to the educator position because it was my passion.  I loved the job and I believe I performed it very well. I have reviewed the statements by Robert Lopez ("Lopez") and Anthony Trantham ("Trantham") that

12

have been filed in connection with UMC's motion for summary judgment in this case. In their statements, they make many negative claims about my job performance as an educator in 2016 and 2017. Their claims are false.

(App.2). Plaintiff goes on to specifically address the claims made by Lopez and Trantham:

'In 2016 I received a performance evaluation from Trantham related to my job performance in 2015. The performance evaluation was good enough that I received a merit raise for the year. Merit raises are given to employees whose job performance in a year exceeds expectations. The performance evaluation also had suggestions for me to improve my performance as an educator. I took these suggestions to heart and adjusted my duties accordingly. From the time I received the evaluation to the day I was fired I made changes such as coming in later at night, taking a greater role in actively monitoring younger respiratory therapists, and personally making rounds with the younger therapists. I also gave the younger therapists my telephone number and encouraged them to call me anytime with any questions, which many did on a number of occasions. I made every effort to be there for them while they were learning their duties.

'I was fired by Lopez on March 13, 2017. Lopez told me at the time that I was being fired because I was a poor educator. This statement is false. I served as an educator at UMC for a total of eleven years during which time I received numerous merit raises for my job performance. At no time was I ever counseled or reprimanded for my job performance. I did my job well. The real reason I was fired was an effort by UMC to lower costs in the respiratory therapy department by getting rid of older employees who made higher salaries than their younger counterparts.

'I have reviewed the statements of Lopez and Trantham, along with the exhibits attached to the statements. In the statements they each make numerous claims about my job performance in 2016 and 2017. Among other things, they include anonymous statements that they claim were complaints against me by various employees. The complaints are unsigned and I have no idea if they are real or the context in which they were made. I do know that at no time before March 13, 2017 was I ever told by anyone at UMC about any complaint towards me by any person, employee or otherwise.

13

Attached to this declaration as exhibit A are evaluations given by new respiratory therapists about the training they received. These evaluations, which are clearly not contrived and which were prepared and signed by actual employees in accordance with UMC procedures, paint a different picture than the claims made by UMC and show that, in fact, the majority of the new therapists approved of the training they received.

'Lopez and Trantham claim in their statements that they made multiple attempts in 2016 and 2017 to improve my job performance through meetings with me where they supposedly told me things I needed to work on to improve my performance. These statements are not true. Neither Lopez, Trantham, nor anyone else at UMC met with me in 2016 or 2017 to tell me that I was not performing my job as an educator properly. From and after the time I received my 2015 annual review and made the suggested changes in the review, I was never counseled or in any way told that I was not properly performing my job duties. The first time I learned that there was supposedly a concern about my job performance was on the day that I was fired.

(App. 4-6).

In addition to the direct challenge by Plaintiff to the claimed basis for termination, UMC's decision to fire Plaintiff is suspect for other reasons as well. First, the summary judgment evidence shows that during 2017, UMC, in addition to firing Plaintiff who was 57, also fired three other long time employees of the respiratory therapy department, each of whom was over 60 years of age. (App 2-3). Because of their age and longevity, the terminated respiratory therapists had an income that was significantly higher than new respiratory therapists. (App.3). It is indeed noteworthy that in 2016, UMC hired an unusually high number of new respiratory therapists who were paid $21.00 per hour and then turned around in 2017 and fired four long time, older employees in the respiratory therapy department who were paid much more than the new hires. (App.3). All four of the older employees were fired by Lopez. (App.3).

14

Next, it is also noteworthy that UMC did not follow its own progressive discipline policy with regard to its decision to fire Plaintiff. The evidence shows that UMC has a progressive discipline plan in place which outlines steps to be taken before firing an employee. (App.3). Generally, steps to be taken before firing an employee are (1) informal counseling, (2) written disciplinary counseling, (3) reprimand with probation, and (4) reprimand with suspension. (App.3). From the time Plaintiff returned to her role as an educator in 2014 up to the date of her termination in March 2017, Plaintiff was never counseled, warned, written up or in any way disciplined by UMC for her job performance as an educator. (App.3). A copy of the progressive discipline plan is attached as exhibit RL1 to the declaration of Robert Lopez.

It is clear that UMC did not follow the progressive discipline plan when firing Plaintiff. Although a defendant may fire an at will employee without following an established discipline plan, the law is well established that where an employer opts to have a disciplinary system that involves warnings, the employer's failure to follow the plan may give rise to an inference of pretext. *Goudeau* at 477; *Machinchick* at 354 n.29. Plaintiff was not counseled and did not receive any type of warning, probation or suspension before being fired. (App.6). The reason given by UMC for firing Plaintiff (ie. poor job performance) is conduct that would fall within the progressive discipline plan. Moreover, although UMC may now try to claim that Plaintiff's alleged poor educator skills violated a UMC policy concerning patient safety, the declaration of Plaintiff clearly controverts this claim and establishes for the purpose of summary judgment that no conduct by her created any type of issue concerning patient safety. (App.6).

Moreover, although Lopez and Trantham now claim in their statements that they made

15

multiple attempts in 2016 and 2017 to improve Plaintiff's job performance through meetings with her, Plaintiff states that these claims are not true and that Lopez and Trantham, did not at any time before firing her tell her that she was not performing her job as an educator properly. (App.5-6). Plaintiff states that after she received her 2015 annual performance review and made the changes suggested by the review, she was never counseled or in any way told that she was not properly performing her job duties. (App.6). The first time Plaintiff learned that there was supposedly a concern about her job performance was on the day she was fired when Lopez for the first time told her that there had supposedly been multiple problems with her performance for over a year. (App.6).

The controverting summary judgment evidence put forth by Plaintiff, which must be believed at this stage of the case, is sufficient to raise an inference of pretext. See *Goudeau* at 478. In *Goudeau,* the employee produced evidence that: (1) he had not been warned about his alleged poor job performance until the date he was fired; (2) the employer had not followed its disciplinary policy; and (3) the employer had made ageist statements which appeared to have been corroborated by the firing of the plaintiff and another older employee. *Id.* The court held that such evidence was sufficient to raise an inference of pretext which, when taken together with the prima facie of discrimination, was sufficient to allow a jury to find that discrimination was a but-for cause of termination. *Id.*

The present case is similar to the *Goudeau* case. Plaintiff here, like the plaintiff in that case, strongly challenges the reasons given by UMC for firing her and directly controverts the statements made by Lopez and Trantham used as support for termination. Likewise, the evidence

16

shows that UMC, like the employer in *Goudeau*, did not follow its own disciplinary plan with regard to Plaintiff's firing. Also, although no ageist statements were made to Plaintiff by Lopez, the evidence in this case shows that in addition to Plaintiff, three other long time, elderly employees in UMC's respiratory therapy department were fired in 2017, suspiciously after an unusually large number of new and younger respiratory therapists had been hired in 2016. Finally, like the plaintiff in *Goudeau*, Plaintiff here was not given any opportunity to correct any perceived problems with her job performance because she was never told there was a problem until the date she was fired. The evidence is thus sufficient to infer pretext which, when taken with Plaintiff's prima facie case of discrimination, is then sufficient to allow a jury to find in this case, as in *Goudeau*, that discrimination was a but-for cause of termination.

4.

CONCLUSION

The summary judgment evidence in this case shows that Plaintiff worked faithfully at UMC for twenty seven years, that she worked hard and took pride in her work. The evidence shows that the reasons given by UMC for firing Plaintiff are false and that Plaintiff was in fact satisfactorily performing her job as an educator in 2016 and 2017.  Plaintiff performed her job well and was never told before the date she was fired that she was doing any part of her job improperly. Plaintiff was fired along with several other long-time, elderly employees within the same department simply to cut costs. Such evidence is sufficient for the purposes of a summary judgment proceeding to raise an inference of pretext with regard to the reason given by UMC for firing Plaintiff. This fact, coupled with the prima facie case, is sufficient to create a genuine issue

17

of material fact on the issue of intentional discrimination by UMC. Therefore, the motion for summary judgment filed by UMC should be denied.

## CERTIFICATE OF SERVICE

This shall certify that a true and correct copy of this item was served on Defendant via the court's efiling system on the date of filing, as follows:

Don C. Dennis
Boerner, Dennis & Franklin, PLLC
P.O. Box 1738
Lubbock, TX 79408

J. Craig Johnston