UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2020 FEB 26  PM 2: 46

DEPUTY CLERK

ROSEMARY SALAZAR,

      Plaintiff,

v.                                                                  No. 5:18-CV-232-H

LUBBOCK COUNTY HOSPITAL
DISTRICT d/b/a UNIVERSITY
MEDICAL CENTER,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING UMC'S MOTION FOR SUMMARY JUDGMENT

Before the Court is University Medical Center's Motion for Summary Judgment in

this lawsuit under the Age Discrimination in Employment Act. Dkt. No. 12. At issue is

whether the evidence establishes a genuine dispute of material fact as to whether UMC's

stated reasons for terminating Salazar were pretextual. The Court finds that the evidence of

Salazar's poor performance and insubordination—and the lack of evidence of pretext for

age discrimination—preclude Salazar from raising a genuine dispute of material fact. Thus,

the Court grants UMC's Motion for Summary Judgment, dismisses all claims, and denies

all requested relief.

**1.    Factual Summary**

Rosemary Salazar began her employment with UMC as a respiratory therapist in

1990. Dkt. No. 14 at 3. She first served as an educator in the respiratory therapy

department at UMC from 2004 to 2012 and was the assistant director of the department

between 2012 and 2014. Dkt. No. 16 at 12. As of 2015, she again served as an educator.

Dkt. No. 14 at 3. According to UMC, her responsibilities in that position were "to

coordinate the orientation schedule, monitor the progress of therapist orientations, to make adjustments where necessary, and to assist in the orientation process where necessary." *Id.*

Anthony Trantham, who served as an assistant director of the respiratory-therapy department, prepared Salazar's annual performance review for 2015, which he delivered to Salazar on March 21, 2016. *Id.* at 3–4. The performance review highlighted several areas of concern to UMC—many therapists mentioned that Salazar did not work with their schedules to complete their orientations, she refused to attend night shifts, and she refused several directives from her supervisors. *Id.* at 4–6. At her deposition, Salazar testified that Robert Lopez, the director of the respiratory-therapy department, suggested that she meet orientees on the night shift but that she declined to arrange such meetings. Dkt. No. 13 at 105–07.

UMC claims that, at a meeting in November 2016 with Trantham, Salazar "informed Anthony that the management team was broken and that her job was not fun anymore." Dkt. No. 14 at 8. In response, she was told that "if she was not happy in her job, she needed to reevaluate her role as adult educator." *Id.* The hospital also contends that "attempts were made, in one on one meetings, educator meetings, and in her performance evaluation, to communicate with Ms. Salazar about the importance [of changing] her current practices to accommodate the changing needs of education in respiratory care." *Id.* at 9. Salazar states in a declaration, however, that between 2014 and 2017 she was "never counseled, warned, written up[,] or in any way disciplined by UMC for [her] job performance as an educator." Dkt. No. 17 at 3.

On March 13, 2017, UMC terminated Salazar's employment as an adult educator. *See* Dkt. No. 14 at 11. Per UMC, Salazar "was informed that making a change in the adult

2

educator position would be the resolution to this unresolved problem," at which time she attempted to assign blame for issues in the department to others, confirming UMC's decision to terminate her employment. *Id.* In her declaration, Salazar's account of her termination states only that Lopez told her that she was being fired because she was a poor educator. Dkt. No. 17 at 4.

## 2. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, courts must not make credibility determinations or weigh evidence but must instead draw all reasonable inferences in favor of the non-moving party. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). Nevertheless, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

### B. Burden of Proof to Establish Pretext in Employment-Discrimination Cases

Under the Age Discrimination in Employment Act, it is unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). An ADEA plaintiff may prove discrimination by direct or indirect evidence. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). To establish a prima facie case of age discrimination based on circumstantial evidence, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he

3

was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid*, 376 F.3d at 309 (internal quotations and citations omitted)).

If the plaintiff establishes a prima facie case of age discrimination based on circumstantial evidence, the "defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff." *Rachid*, 376 F.3d at 312. Where the defendant meets its burden of production, the plaintiff may defeat summary judgment by offering either "evidence showing that the defendant's proffered nondiscriminatory reasons are false" or "evidence showing that his age was a motivating factor for the defendant's adverse employment decision." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005).

To show that an employer's reason for terminating an employee was pretextual, the employee must demonstrate not only that the stated reason was false but also that the employer knew of its falsity. *See Ward v. Gray Television Grp., Inc.*, 787 F. App'x 850, 850–51 (5th Cir. 2019) (applying this standard to an ADEA claim); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (applying the same standard to a race-discrimination claim). Additionally, the employee must demonstrate that the employer had the subjective intent to discriminate against the employee. *Ward*, 787 F. App'x at 851; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Even "an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action and defeats the plaintiff's attempt to establish pretext. *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

4

3.    Analysis

A.    **Salazar's insubordination and failure to follow directions prevent her from establishing pretext.**

In their summary-judgment briefing, the parties do not appear to contest that Salazar has articulated a prima facie case of age discrimination and that UMC has articulated a legitimate, non-discriminatory reason for terminating her employment. *See* Dkt. No. 14 at 13–14; Dkt. No. 16 at 11–12.  Thus, the Court assumes that Salazar has made out a prima facie case and proceeds to resolve the contested issue of whether there is a genuine dispute of material fact as to pretext or mixed motives. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).  When considered as a whole and drawing all reasonable inferences in Salazar's favor, the summary judgment record sufficiently indicates that Salazar's insubordination and failure to take direction from her supervisors precludes a reasonable factfinder from determining that UMC's stated reasons for terminating her were wholly or partially pretextual.  Thus, there is no genuine dispute of material fact regarding pretext or mixed motive.

i.    **Salazar's failure to attend night shifts precludes her from raising a jury question regarding UMC's motives for terminating her.**

One of the reasons to which UMC cites in support of its decision to terminate Salazar's employment is her failure to attend night shifts and provide orientation training to night-shift employees at times that would have been convenient for those employees. *See* Dkt. No. 14 at 8.  UMC's claim finds support in the annual performance review given to Salazar in March 2016, which states that, when Salazar was "asked to host inservices for the night shift at 2130 [9:30 P.M.], this was also met with great resistance and refused." *Id.* at 4; Dkt. No. 13 at 84.  The performance review also notes that Salazar had been provided options for orienting new graduates assigned to the night shift, but she did not approve of

5

those options and did not execute any of them because she was not willing to make sacrifices on behalf of the department. Dkt. No. 14 at 4; Dkt. No. 13 at 85.

In response, Salazar argues that the performance evaluation was strong enough that she received a merit raise for that year and that she improved her performance by following the suggestions offered in the annual review. *See* Dkt. No. 16 at 7. Yet Salazar must call into question not only the wisdom of the challenged personnel decision but also its motivation. Salazar's contentions regarding her alleged response to valid criticisms of her performance do not raise a genuine dispute of material fact as to motive. *See Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (explaining that a wrongful-termination plaintiff "cannot survive summary judgment merely because she disagrees with [her employer's] characterization of her disciplinary history," but instead must produce evidence tending to establish that the employer did not believe its own narrative). An employer may legitimately weigh several factors that make up an employee's performance differently when awarding raises and making termination decisions, and an employee's "history of high performance and success" in certain respects does not itself establish a genuine dispute of material fact as to pretext. *Kean v. Jack Henry & Assoc., Inc.*, 577 F. App'x 342, 351 (5th Cir. 2014). Courts must decline "to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination." *Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)). Here, given the summary judgment record and the parties' arguments, Salazar has not presented a genuine dispute of material fact.

> ## ii.   Part III of Salazar's March 2016 performance evaluation, which Salazar fails to rebut, lends further support to UMC's stated reasons for terminating Salazar.

Part III of the March 2016 performance evaluation provides additional support for UMC's account of Salazar as a difficult employee. Trantham wrote that "2015 was a difficult transition for Rosemary." Dkt. No. 13 at 84. "Rosemary struggled accepting directives from me and would spend more time telling me why my ways were not the right way than to attempt the assigned task. Rosemary likes to do things her way and has a hard time with change." *Id.* Trantham also provided specific examples of Salazar's intransigence. *See id.*

Salazar does not directly dispute the performance evaluation's account of her as a difficult employee, but rather states generally in her declaration that she believes she performed her duties well after the evaluation. Regardless of her allegedly strong performance in other respects, the "failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee." *Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 322 (5th Cir. 2011) (quoting *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167–68 (5th Cir. 1999)). Accordingly, Salazar has not demonstrated a genuine issue of material fact as to pretext.

> ## iii.   UMC's failure to document Salazar's allegedly ongoing performance issues in 2016 and 2017 does not give rise to a genuine issue of material fact as to pretext.

Although Salazar contends that the performance issues UMC cites are pretextual because UMC did not document them at any point between the March 2016 performance evaluation and the March 2017 termination, her argument fails because employers need not document all instances of performance issues that they have already addressed with the employee. There is no inconsistency between UMC's contention that it had persistent

7

issues with Salazar's attitude and failure to follow directions and Salazar's assertion that UMC did not endure ongoing problems with her substantive performance as an educator. *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 234–35 (5th Cir. 2015).

Additionally, a "lack of contemporaneous documentation, alone, is not evidence of pretext; the employee must also demonstrate why the absence of documentation matters." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015). Salazar has not demonstrated why the absence of additional contemporaneous documentation matters here, given that she has not and cannot dispute that she was made aware of UMC's concern regarding her intransigent attitude in March 2016. Moreover, Salazar's arguments generally challenge UMC's assessment of her performance during the limited time period between March 2016 and March 2017, but "[m]erely disputing [an employer's] assessment of [an employee-plaintiff's] work performance will not necessarily support an inference of pretext." *Kean*, 577 F. App'x at 351 (quoting *Evans*, 246 F.3d at 355).

Salazar's arguments do not undermine UMC's stated reasons for terminating her, so she cannot raise a jury question as to pretext.

**B.    The disputed teaching evaluations are competent summary judgment evidence and support UMC's allegations of Salazar's poor performance.**

In support of its summary judgment motion, UMC submits a host of purported evaluations from UMC employees trained by Salazar. *See* Dkt. No. 14 at 9–11. The evaluations claim that Salazar failed to make herself available to new employees and was ineffective in orienting them. *Id.* Although Salazar disputes the authenticity and accuracy of certain negative evaluations of her teaching abilities that UMC employees allegedly submitted, the Court finds that the evaluations are competent summary judgment evidence

8

and that they support UMC's position that Salazar's poor performance as an educator contributed to her termination.

Evaluations of an employee need not be signed to be competent evidence on a summary judgment motion or at trial. For instance, the Fourth Circuit held that, despite the anonymous nature of student evaluations, a district court erred in excluding student evaluations in a professor's wrongful-termination suit because the evaluations had high probative value. *See Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 379–80 (4th Cir. 1995); *accord Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000) (concluding that poor student evaluations refuted an employee's claim that his employer's stated reasons for terminating his employment were pretextual). Moreover, because Salazar has not filed an evidentiary objection or motion to strike the evaluations, the evidentiary issue is not properly before the Court.

Here, the negative evaluations that UMC employees allegedly submitted and that Salazar's superiors allegedly considered in deciding to terminate her employment are highly probative of her performance. *See Rubinstein*, 218 F.3d at 400. Although the Court must take Salazar's assertion that she was not made aware of the evaluations until the day of her terminations as true at this procedural stage, the Court finds that UMC's alleged failure to show the negative evaluations to Salazar at an earlier date does not give rise to a jury dispute as to pretext because Salazar had already been made aware of issues surrounding her lack of availability to new employees. As she was aware that UMC management was concerned about her failure to make herself available to new employees and therefore knew of ongoing issues with aspects of her performance, Salazar cannot use UMC's alleged failure to present her with the negative evaluations to establish a genuine issue of material

9

fact as to pretext. *See Palacios v. City of Crystal City*, 634 F. App'x 399, 404 (5th Cir. 2014) (stating that prior performance evaluations, which raised concerns about aspects of an employee's performance, refuted the employee's claim of pretext).

### C.   Teaching evaluations to which Salazar cites undermine her claims of strong performance.

Moreover, the teaching evaluations that Salazar herself submitted in opposition to summary judgment are relatively weak and support UMC's claim that she performed poorly. Salazar cites to a November 23, 2016 evaluation of her teaching submitted by April Lambert, which includes several ratings of "2" on a scale of 1 to 5. *See* Dkt. No. 17 at 9. Lambert gave Salazar a rating of "1," or "No Help," on the question of whether Salazar followed up with her after the orientation, and Lambert wrote, "I didn't hear much from [Salazar] during my orientation in [adult critical care]." *Id.*

An instructor who supervised Salazar's orientees, Debbie Lollar, evaluated Salazar on February 17, 2017 and awarded her several ratings of 3 out of 5, a rating of 2 on the question of interest in the orientation, and a "No Help" rating on the question of whether Salazar followed up after the orientation. *Id.* at 13. Lollar stated, "I only hear from Rosemary when [new employees] have turned in the packet, or if they haven't turned it in. I do not get any weekly updates." *Id.* At her deposition, Salazar admitted that weekly follow-up is important and that she failed to follow up with Lollar. Dkt. No. 13 at 109–11.

These evaluations, which purport to contradict UMC's claim that Salazar performed poorly in the months preceding her termination, in fact provide substantial support for UMC's position. Thus, the Court finds that Salazar's proffered evaluations cannot create a genuine issue of material fact regarding pretext.

**D.    Salazar fails to demonstrate sufficient similarity of circumstances between the terminated employees and the newly hired employees to create a jury question as to pretext.**

Per Salazar's brief, UMC's termination of three other employees over the age of 60 in 2017 and hiring of new respiratory therapists in 2016 render the decision to terminate Salazar "suspect." Dkt. No. 16 at 14. Where a plaintiff alleges disparate treatment on the basis of age, "the plaintiff-employee must show 'nearly identical circumstances' for employees to be considered similarly situated." *Berquist*, 500 F.3d at 353 (quoting *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004)).

Here, Salazar has not presented the level of similarity of circumstances between herself and the newly hired respiratory therapists that is required to create a genuine dispute of material fact as to pretext. She has not alleged that the respiratory therapists hired in 2016 were hired to fill roles that were similar to her own, nor has she shown that any UMC employee, similarly situated or otherwise, was treated more favorably than she was after committing the same type of misconduct. *Cf. Gilbert v. Brookshire Grocery Co.*, 354 F. App'x 953, 954 (5th Cir. 2009) (explaining that the nature of employees' misconduct must be nearly identical to establish the requisite similarity of circumstances). The termination of other employees within the protected age range and the hiring of younger employees therefore cannot create a conflict in substantial evidence as to pretext.

11

**E.     Given the circumstances, UMC's failure to follow its non-mandatory progressive-discipline policy does not create a genuine dispute of material fact regarding whether UMC's stated reasons for firing Salazar were pretextual.**

Salazar's strongest argument against the entry of summary judgment is that UMC's failure to follow its progressive-discipline policy gives rise to a showing of pretext. *See* Dkt. No. 16 at 15.  UMC's progressive-discipline policy provides:

> An employee will be subject to disciplinary action ranging from counseling to discharge for committing or participating in any of the acts listed in Section IV, Employee Conduct.  The usual level of discipline is also listed.  These levels are recommendations.  Management reserves the right to impose the level of discipline deemed appropriate for specific sets of circumstances.

Dkt. No. 18 at 5.  UMC does not appear to dispute that it declined to follow the progressive-discipline policy when it terminated Salazar without formally reprimanding her beforehand.

Salazar argues that UMC would have given her verbal counseling or written reprimands before firing her if it had acted in good faith and not with discriminatory intent when it terminated her employment.  UMC responds that its progressive-discipline policy is not mandatory and that management exercised the discretion with which it is vested when it decided to terminate Salazar.  Although a failure to follow a progressive-discipline policy can give rise to an inference of pretext, the Court finds that it does not create such an inference in this case because of the non-mandatory nature of the policy and the documented issues with Salazar's attitude and job performance.

When "an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015); *see also Machinchick*, 398 F.3d at 354 n.29.  By its terms, however, UMC's progressive discipline policy is not mandatory, and it indicates that "the disciplinary measures used in a particular case will be highly dependent on the

12

specific circumstances." *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 367 (5th Cir. 2009). Thus, the Court finds that the failure to follow the progressive discipline policy does not, on its own, create an inference of pretext absent additional evidence that UMC "generally followed the four steps outlined in its disciplinary policy, or that the policy was applied differently to similarly situated employees." *Id.* Salazar has not adduced such evidence here.

Moreover, in the cases in which the Fifth Circuit has found that the failure to follow a progressive-discipline system created a genuine dispute of material fact as to pretext, there have been additional allegations or facts indicating the employer's bad faith. For instance, the plaintiff in *Goudeau* alleged that his former employer "manufactured steps in the disciplinary policy by issuing written warnings to paper his file after it had decided to fire him." 793 F.3d at 477. In *Machinchick*, the plaintiff produced evidence that the employer considered him to have performed well in the months before his termination and that the employer did not give him enough time to be evaluated under the company's "cradle-to-grave plan." 398 F.3d at 354–55.

In this case, Salazar has not offered competent evidence of pretext other than UMC's failure to follow its progressive-discipline policy. Salazar's claim rests on the progressive discipline policy, her contention that she performed well in her position, and the alleged termination of several older employees and hiring of younger employees in 2016 and 2017. Yet, as discussed above, UMC documented its issues with Salazar's attitude and performance during her March 2016 evaluation. Moreover, Salazar's perception of her own performance is both irrelevant and contradicted by numerous evaluations of her teaching, including some evaluations to which she cites. She has also not made any showing that the

13

employees UMC terminated in 2017 were similarly situated to the newly hired employees. Thus, the Court concludes that UMC's lack of adherence to its progressive-discipline policy does not create an inference of pretext in this case.

**4.    Conclusion**

Salazar's March 2016 performance review and numerous negative evaluations of her teaching, including evaluations to which she cites, document her allegedly poor attitude and significant performance issues. She has not demonstrated similarity of circumstances between terminated employees and newly hired employees or linked UMC's failure to follow its progressive-discipline policy to any alleged bad faith attributable to UMC. Accordingly, even when weighing all reasonable inferences in Salazar's favor, Salazar cannot create a jury question as to whether UMC's stated reasons for terminating her employment were pretextual. Thus, the Court grants summary judgment for UMC on Salazar's ADEA claim. All claims are dismissed and all requested relief is denied. The Clerk of Court is directed to terminate this case.

So ordered on February 26, 2020.

James Wesley Hendrix
United States District Judge

14